Heckman's Adm'r v. Lou. & Nash. R. R. Co.

CASE 77—PETITION ORDINARY—MAY 21.

# Heckman's Adm'r v. Lou, & Nash, R, R, Co,

APPEAL FROM JEFFERSON COURT OF COMMON PLEAS.

MISNOMER OF DEFENDANT—LIMITATION.—When a party enters his appearance, and makes defense to an action, he can not afterwards complain of the judgment that may be rendered against him, upon the ground that he was sued by the wrong name, or that the name of a different person was inserted in the caption of the petition, and in the summons; and it, therefore, necessarily follows that the action must be regarded as commenced and actually pending against him, at least from the time he so enters his appearance, if not from the time he is served with the summons.

In an action by an administrator to recover for the destruction of his intestate's life, by the alleged willful neglect of the defendant, the defendant was by mistake named in the caption of the petition and in the summons as the "Louisville, Cincinnati and Lexington Railroad Company," instead of the "Louisville and Nashville Railroad Company," but summons was, in fact, served on the latter company. An answer was filed having the same caption as the petition, and containing simply a traverse by "the defendant." After the expiration of more than one year from the killing, an amended petition was filed alleging the mistake in the original petition, and asking judgment against the Louisville and Nashville Railroad Company. That company then filed an answer to the amended petition, relying upon the limitation of one year in bar of the action. Held—That it is evident, from all the circumstances, that the answer to the original petition was filed in behalf of the Louisville and Nashville Railroad Company, and had the effect to enter the appearance of that company, and having been filed within one year after the killing occurred, the action is not barred by limitation.

YOUNG & TRABUE FOR APPELLANT.

1. The intention of appellant was to sue appellee, and not the Louisville, Cincinnati and Lexington Railway Company. The facts present the common case of a misnomer. (Sherman v. Proprietors of Connecticut River Bridge, 11 Mass., 388; Smith v. Bowker, 1 Mass., 76.)

2. But appellee's course renders plaintiff's intention immaterial. The appellee, by the answer of March 3, 1883, which the facts show was filed by it, adopted the allegations of plaintiff's petition as applicable to it, and took issue with plaintiff on them, and proceeded to litigate with plaintiff the issues thus made.

Where a party is served, and appears and defends the action with-out pleading a misnomer in abatement, judgment may be rendered against him in the erroneous name, and enforced by execution levied on his property, or by proceedings on the judgment, he being connected with the suit by proper averments. (Valentine v. Mahoney, 37 Cal., 389; Russell v. Mallon, 38 Cal., 259; McCreery v. Everding *et al.*, 54 Cal., 168; First Nat. Bank of Baltimore v. Jaggers, 31 Md., 38; Lafayette Ins. Co. v. French *et al.*, 18 How., 409; Lou. & Nash. R. R. Co. v. Hall, 12 Bush, 131.)

Therefore, the appellant's rights against the L. & N. R. R. Co. were not increased by the amended petition, as the same relief might have been obtained against it without the amendment, it having appeared and defended the original petition.

## O'NEAL, JACKSON & PHELPS ON SAME SIDE.

Where a party, who is sued by the wrong name, chooses to answer by that name, he is bound by it as fully as if he had availed himself of the right to have the name corrected. (1 Chitty's Pleadings, 279; Freeman on Judgments, p 154; L. & N. R. R. Co. v. Hall, 12 Bush; McCreery v. Everding. 54 Cal., 169; Newman's Pleading and Practice, 289.)

Here there was an actual appearance by the appellee, and it makes no difference under what name, so there was an appearance; therefore, the appellee can not now plead the statute of limitations.

## BARNETT, NOBLE & BARNETT FOR APPELLEE.

1. This is not a case of suing the proper defendant by the wrong name, but a clear case of suing the wrong person by his proper name. Hence. the authorities cited to show that names may be corrected or disregarded, have no application.

2. No mistake of any kind will avoid the effect of the statute unless the party falls within some statutory exception. Therefore, where the plaintiff mistakes the party against whom he has a cause of action, and amends his petition after the statute has run, substituting the proper defendant, the latter may rely upon the statute. (Wood on Limitation,' secs. 293, 294; Todd's Appeal, 24 Pa. St., 429 ; Harris v. Dennis, 1 S. & R., 226; Williamson v. Wardlaw, 46 Ga., 126; Newman v. Manin, 12 Hun.. 236; Shaw v. Cook, *Ibid.*, 173 ; Magon v. Clark, 6 Watts (Penn.), 528; Brown v. Goalsdy, 34 Miss., 437 ; Bennington v. Dismore, 2 Gill. (Md.), 348; Logan v. Wilson, 10 Ind., 183.)

## SAME COUNSEL IN PETITION FOR REHEARING.

1. The rule laid down by the court in its opinion has no application to this case. We are not dealing with a case where a person is sued.

Heckman's Adm'r v. Lou. & Nash. R. R. Co.

by his *alias* name, but a case where one person is sued for another's fault, each of them having definite, unambiguous names, both names equally as well known to plaintiffs as to each other.

The cases of L. & N. R. R. Co. v. Hall, 12 Bush, 132; Sherman v. The Bridge, 11 Mass., 337; Bank v. Jaggers, 31 Md., 38, commented upon, and distinguished from the case at bar.

2. The case went off in the court below on a demurrer to the reply to the plea of the statute of limitation, and not upon evidence furnished by sheriff's returns or affidavits. If the court finds that the court below erred in sustaining the demurrer to the reply, then the case goes back to the issues presented by the amended petition, and the answer thereto and the reply to the answer, all of which are triable by jury, (Bank v. Jaggers, 31 Md., 41.)

3. The plaintiffs are estopped to deny that the Louisville, Cincinnati and Lexington Railway Company was sued originally, answered and defended in its own name alone, and, therefore, the amended petition should not have been filed.

4. A *lis pendens* created by a suit against one party, in nowise affects the rights of one not a party; and a new party brought in by amendment stands as though he was then sued for the first time. (Stone v. Connelly, 1 Met., 653; Howes v. Orr, 10 Bush, 432.)

W. LINDSAY on same side.

1. The plaintiff can not be permitted to change the proceedings, *nunc pro tunc*, from an action against the corporation named in the petition and summons, as the defendant, to an action against another and different corporation. To permit this would be to correct the record by the undisclosed intention of one of the parties, which can not be allowed. Orders, for the correction of mistakes, entered *nunc pro tunc* always rest upon something found in the record of the cause.

The case of L. & N. R. R. Co. v. Hall, 12 Bush, commented on.

2. The swearing to the answer by Quarrier did not enter the appearance of appellee. His intention is to be judged by the paper verified, which was filed by the L., C. & L. R. R. Co., and not by the appellee.

JUDGE LEWIS DELIVERED THS OPINION OF THE COURT.

January 23, 1883, the administratrix of H. Heckman, deceased, instituted an action to recover damages for the destruction of his life in December, 1882, alleged to have been caused by the willful neglect of the servants of the defendant named in the caption of the petition, "Louisville, Cincinnati and Lexington

Railway Company." The summons on the petition
was directed against the same defendant, and the re-
turn made thereon by the sheriff of Jefferson county
was as follows : "Executed on Louisville, Cincinnati
and Lexington Railroad Company, January 24, 1883,
by delivering a true copy of the within to M. H.
Smith, Vice-President, he being chief officer in this
county." March 3, 1883, an answer having the same
caption, and signed by Barnett, Noble & Barnett, was
filed, which contained simply a traverse by "the de-
fendant" of the allegations of the petition, and ap-
pended to the answer was a verification in the usual
form, signed A. M. Quarrier, who stated therein he was
assistant to the president, and assistant secretary of
the defendant, and that the president and vice-presi-
dent were then absent from this State, and that the
secretary was too ill to attend to business. In June,
1883, the administratrix having died, an order of revi-
vor was made in the name of the present plaintiff,
and appellant, as administrator *de bonis non* of the
estate of the decedent.

All the motions made by the plaintiff were directed
against Louisville, Cincinnati and Lexington Railway
Company, and the caption of all orders made and en-
tered on record was the same as of the petition until
January 21, 1884, when the plaintiff moved to file an
amended petition, which was filed February 7, 1884.

In that amended petition the plaintiff stated that,
by mistake, the defendant was styled in the caption of
the petition the Louisville, Cincinnati and Lexington
Railway Company, when it should, and was intended
to be, the Louisville and Nashville Railroad Company,

which is the correct name of the defendant sued and intended to be sued in the action, and prayed that the defendant be required to defend by its correct name of the Louisville and Nashville Railroad Company, and for judgment against it as prayed for in the original petition.

May 31, 1884, an order was made dismissing the action as to the Louisville, Cincinnati and Lexington Railway Company, and June 21, 1884, the Louisville and Nashville Railroad Company filed an answer to the amended petition, pleading and relying upon limitation in bar of the action against it; and the sufficiency of that ground of defense presents the only question before us on this appeal.

As more than one year elapsed from December, 1882, when it is alleged plaintiff's intestate was killed, to February, 1884, when the amended petition was filed, the simple inquiry is, whether that amendment made an entirely new action against the Louisville and Nashville Railroad Company.

Though a party against whom a cause of action exists may be sued therefor by the wrong name, yet if the summons be actually served upon him, and he appears and files an answer, it seems to us he is as effectually before the court, as much a party to the action, and concluded by a judgment rendered against him, as if his name had been inserted in the caption of the petition and in the summons issued by the clerk. Such was the rule under the former system of pleading. For, as said by this court in L. & N. R. Co. v. Hall, 12 Bush, 131, relying upon the authority of Chitty's Pleadings, "at common law, when the defend-

ant was sued by the wrong name, he might plead that
fact in abatement, but to make his plea good, he was
bound to give the plaintiff a better writ in the future
by disclosing his true name;" and as held in the case
cited, the same rule may be applied under our Civil
Code.    Moreover, section 134 expressly authorizes a.
petition to be amended at any stage of the action, by
correcting a mistake in the name of a party.    In Sher-
man v. The Proprietors of Connecticut River Bridge,
11 Mass., 337, the plaintiff brought an action against
the defendant by the name of "The Proprietors of a
Bridge over Connecticut river, between Montague and
Greenfield, late in the county of Hampshire and now
in the county of Franklin;" and afterwards, the
plaintiff was permitted to amend his writ by altering
the name of the defendants to that of "The Proprie-
tors of Connecticut River Bridge."

It appears that certain persons were incorporated
by the name mentioned in the writ; but that company
having forfeited its charter, a new and distinct one
was created, having the name of "The Proprietors of
Connecticut River Bridge."    Said the court in that
case: "The first corporation was dead, and the new
one was created for the same purpose and object.    The
writ was served on the clerk of the existing corpora-
tion, by which regular notice was given to the real
proprietors of the bridge.    This is, then, the common
case of misnomer.    The amendment may be made on
the common rule of an election by the defendant of
the costs of the action to this time or a continuance."

In First National Bank of Baltimore v. Jaggers, 31
Md. Reports, 43, the court used the following lan-

.guage; "There is no doubt that where a party is sued by the wrong name, and he appears to the suit and does not plead the misnomer in abatement, and judgment is rendered against him in the erroneous name, execution may be issued upon it in that name, and levied upon the property and effects of the real defendant; but there is some conflict in the decisions whether the same result will follow if he does not appear, and the judgment is obtained by default. The weight of authority, however, is that this makes no difference, and if the writ is served on the party intended to be sued, and he fails to appear and plead in abatement, and suffers judgment to be obtained by default, he is concluded, and in all future litigation may be connected with the suit or judgment by proper averments."

The same doctrine is stated in "The Lafayette Insurance Co. v. French *et al.*, 18 Howard, U. S., 404, and in Freeman on Judgments, 154, where numerous cases are cited.

In L. & N. R. Co. v. Hall, the plaintiff sued a corporation styled "The Louisville, Nashville and Great Southern Railway Co., "and the summons was executed on Albert Fink, who was designated by the sheriff as vice-president of that corporation. On the calling of the cause, "defendant, by attorney, moved the court to quash the sheriff's return on the process herein," and accompanied the motion with an affidavit, by Fink, to the effect there was no such corporation known to him as the one made defendant to the action; and there was, also, an answer filed, in which it was denied there is or ever was any

such corporation as the one sued, which was sworn to by "the attorney for the defendant." In that case the court said: "The testimony showed beyond cavil, that the proper defendant was in court. It knew its own name. The answer it saw proper to file was in the nature of a plea in abatement. It presented no defense whatever to the action. * * And as it failed to plead further, and failed to disclose its true corporate name, it can not complain that the judgment was rendered against it in the name by which it had been sued."

In our opinion, not only according to unvarying authority on the subject, but upon the principle of estoppel and common fairness, when a party enters his appearence and makes defense to an action, he can not afterwards complain of the judgment that may be rendered against him, upon the ground that he was sued by the wrong name, or what is practically the same thing, that the name of a different person was inserted in the caption of the petition and in the summons; and it, therefore, necessarily follows that the action must be regarded as commenced and actually pending against him, at least from the time he so enters his appearance, if not from the time he is served with the summons.

We are then left with the single inquiry in this case whether or not the Louisville and Nashville Railroad Company did enter its appearance and make defense to the action within one year from the alleged killing of plaintiff's intestate. For if it did, the plea of limitation can not avail. Though the summons was directed against the Louisville, Cincinnati and Lexington

Railway Company, it was actually served on the Lou-
isville and Nashville Railroad Company. For M. H.
Smith, upon whom it was executed, was, at the time,
the vice-president of the latter and not of the former
company. It is true he states, in an affidavit, he was
then the president of the former, but the summons
was served on him as vice-president, not as president.

However, the main question is, in whose behalf the
answer was filed March 3, 1883.

It is alleged and not denied, that when Heckman was
killed, the Louisville, Cincinnati and Lexington Rail-
way Company did not own or operate the road from
Louisville to Lagrange, where the killing occurred,
having previously sold and delivered possession and
control of it to the Louisville and Nashville Rail-
road Company.

If the answer mentioned had been filed for and on
behalf of the Louisville, Cincinnati and Lexington
Railway Company, it would have been a complete
defense to the action against it, and, therefore, of
course, stated in the answer that, at the time of the
killing, that company did not own, control or operate
the road, and Hickman was not, as alleged in the peti-
tion, its employe. But the Louisville and Nashville
Railroad Company could not truthfully make such
defense, nor was it attempted to be made in the an-
swer. Quarrier, who swore to the answer, was, at the
time, an officer of the Louisville and Nashville Rail-
road Company, and as such, obviously for that com-
pany, made the affidavit.

It is alleged in the amended petition that Barnett
& Noble, whose names are signed to the answer, pre-

pared and filed it as the attorneys of the Louisville and Nashville Railroad Company. This allegation was, we think, improperly stricken out of the pleading by the lower court; but it makes no difference so far as the question of fact is concerned, for it would have been easy enough for the attorneys to have stated, if it had been true, that they filed the answer of March 3, 1883, for the Louisville, Cincinnati and Lexington Railway Company.

As this record stands, we are satisfied the Louisville and Nashville Railroad Company caused the answer to be filed, and its appearance to the action entered within one year after the plaintiff's intestate was killed; and as, unquestionably, if the plaintiff had any cause of action at all, it was against that company, we think the lower court erred in sustaining a demurrer to the reply. Therefore, the judgment is reversed, and cause is remanded for further proceedings consistent with this opinion.